## Groff *versus* Levan.

After the execution and recording of a mortgage, but before the issuing of a scire facias thereon, the mortgagor leased a portion of the mortgaged premises for a year, to a cropper, who paid the rent *in advance*, and sowed grain upon it. Before the grain was cut, the land was sold at sheriff's sale, under proceedings on the mortgage commenced after the making of the lease: *Held*, that the grantee of the purchaser of the land was entitled to recover damages from the cropper for cutting and removing the grain.

ERROR to the Common Pleas of *Lancaster county*.

This was a suit by George Levan v. Levi W. Groff, involving the right to grain. A case was stated, embracing, with others, the following facts:—

March 19, 1844, mortgage, Samuel W. Groff to the Farmers' Bank of Lancaster, on 18 acres of land—same day, mortgage recorded.

To November term 1847, scire facias on the mortgage. November 22, 1847, judgment for plaintiff for $8450.66.

Levari facias to January term 1848. Returned "real estate sold to Farmers' Bank of Lancaster for $4700."

January 22, 1848, sheriff's deed to the Farmers' Bank of Lancaster, for property mortgaged. Same day, acknowledged.

April 1, 1848, deed; Farmers' Bank of Lancaster to George Levan, plaintiff, for same property, and on the same day Levan entered into possession of the premises.

At the time of the sale by the sheriff to the Bank, and of the conveyance by the Bank to Levan as above stated, there was a growing crop of rye on about eight acres, parcel of the premises mortgaged and sold. In July 1848, Levi W. Groff, the defendant, cut and carried away the said rye with the straw thereof, and kept and retained the same with the straw, and refused upon demand to deliver the same or any part thereof to the plaintiff. The quantity of rye was 132 bushels, of the value of 65 cents per bushel; and the straw, 400 bundles, at 6 cents per bundle; making the whole value $109.80. The plaintiff seeks to recover this, allowing defendant a credit of $21.45, the expense of harvesting the grain: making his claim $88.35, with interest from 1st August 1848.

The *defendant* claimed the whole of the said rye and straw, on the following facts:—On the 15th day of *September* A. D. 1847, he rented the eight-acre field on which the grain spoken of grew, from Samuel W. Groff, *for the ensuing year,* rent to be paid in advance, and on that day paid the price agreed on, to wit, $142, as per receipt of Samuel W. Groff of that date. He took possession and sowed the grain; and protected, harvested, and took away the grain.

Defendant claimed all the grain; or that he was entitled at least to *the half part* thereof; which is the usual condition on which land is given out to farm.

If the court, on this statement of facts, should be of opinion that the plaintiff is entitled to recover, then judgment to be entered in his favor for such damages as he is entitled to, with costs: otherwise, judgment for defendant.

The court entered judgment for $88.35, with interest, being the whole of the claim of the plaintiff.

It was assigned for error, that the judgment should have been for the defendant below, and not for the plaintiff.

*Stevens,* for plaintiff in error.—In Pennsylvania, grain growing on land is personal, and not real estate; and if sold by defendant, or by judicial sale, before the land is sold by the sheriff, will go to the purchaser, and not to the purchaser of the land. This is very clearly decided in Myers's Assignee *v.* White, 1 *Rawle* 353, and Stambaugh *v.* Yeates, 2 *id.* 161.

In Myers *v.* White, the court show, that notwithstanding a mortgage, the mortgagor may lease the mortgaged premises or sell the grain growing on it; and that a sale on the mortgage before the

termination of the lease, or the harvesting of the grain, does not give the grain to the purchaser.

The act of 16th June 1836 seems to provide for two cases,— where the person is in possession of land sold by the sheriff by *title* younger than the encumbrance on which it was sold; and by a *lease* also younger.

The 119th section of the act of 16th June 1836, relating to executions, provides "that if any lands or tenements shall be sold on execution as aforesaid, which at the time of such sale or afterwards shall be held or possessed by a tenant or lessee, or person holding," &c., "the purchaser, on receiving the deed, shall be deemed the landlord of such tenant, lessee, or other person, and shall have the like remedies to recover any rents," &c., "as such defendant might have had if no such sale had been made." It is very evident that the legislature intended to authorize an eviction only when the person in possession held as purchaser by title subsequent to the judgment; and to give the purchaser at sheriff's sale, only the rights of the landlord, when the defendant was out of possession, and the land farmed by a tenant. Certainly, such lease or tenancy must be *bona fide*, and not made to defraud the mortgage in anticipation of a sale. Here no such fraud is found or pretended. It would be ruinous to hold that property, which had been mortgaged for five or ten years, could not be rented, or grain raised by a tenant, because possibly the mortgagees might sue out a scire facias, and, in two months after grain was sowed, sell on a levari facias, and seize the crops of the tenant. By such doctrine the mortgagor would be deprived of the profits of his property, while it was uncertain whether his creditor would sell him out; and the cultivation of the soil would be greatly discouraged.

But even if the purchaser could have terminated this lease on notice, it was not done here. On the 1st April after the sale, the purchaser's vendee took possession of the balance of the property, the tenant still holding the eight acres so far as was necessary to protect the grain and harvest it. *He had in fact never resided on the property, renting only the field in question.* If therefore the sheriff's vendee had any claim, it was only as landlord entitled to the rent agreed on by the mortgagor. If it be averred that the rent was paid in advance, that can make no difference, as it was paid according to the terms of the lease. This point was well considered and decided in the Bank v. Ege, 9 *Watts* 436. That case and Myers v. White are precisely like the present.

The case of Sallade v. James, 6 *Barr* 144, seems hostile to the above reasoning, and to other adjudged cases. That opinion seems to have been but slightly considered, and does not profess to overrule previous cases. At the worst, plaintiff below and in error can claim but the *half* of the grain, being all that the landlord could have claimed if the land had been worked on the shares.

Q

[*Groff v.* Levan.]

· *Franklin,* for defendant.—This case is precisely similar in the facts to the case of Sallade *v.* James, 6 *Barr* 144, the syllabus of which is—"A judgment was recovered against the landlord prior to the execution of a lease for years at a rent payable in advance. After payment of the rent, and sowing of the crop· by the tenant, the estate of the landlord was sold by the sheriff under the prior judgment. The purchaser, and not the tenant, is entitled to ·the growing crop."

That case is sustained by other authorities. It is too late to contend that a purchaser at sheriff's sale may not elect to disaffirm a lease made after the mortgage or judgment under which he purchases. This point ·must be considered as settled by the· cases, 4 *Watts* 195, McCormick *v.* McMurtrie; 9 *Watts* 439, Bank *v.* Ege; 4 *W. & Ser.* 535, Hempfield *v.* Tevis; 5 *id.* 432; Menough's Appeal.

The opinion of the court was delivered May 26, by

Coulter, J.—This case is ruled by Sallade *v.* James, 6 *Barr* 144, and Bear *v.* Bitzer decided at this term. The circumstance of Levi W. Groff being *a cropper* makes no difference in the application of the law to the case, because it has been ruled by this court that the 119th section of the act of 1836 is not imperative on the purchaser at sheriff's sale, inasmuch as he claims by a title paramount to the tenant's right. In this case, however, the cropper or tenant cut and carried away the whole crop, and claimed it because he had paid the rent in advance; thus disavowing the act of Assembly as for his benefit. But his lease being after the judgment and levy, and there being no severance by a sale, the purchaser's right was absolute.

Judgment affirmed.